# Exhibit A

**FILED**
San Francisco County Superior Court

OCT 18 2007

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO

UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, by and through DENNIS J. HERRERA, City Attorney for the CITY AND COUNTY OF SAN FRANCISCO,<br><br>Plaintiff,<br><br>vs.<br><br>CHOPPER CITY, a criminal street gang, sued as an unincorporated association, EDDY ROCK, a criminal street gang, sued as an unincorporated association, KNOCK OUT POSSE, a criminal street gang, sued as an unincorporated association, and DOES 1 THROUGH 500,<br><br>Defendants. | Case No. 464493<br><br>ORDER GRANTING PRELIMINARY INJUNCTION<br><br>Hearing Date: September 18, 2007<br>Hearing Judge: Peter J. Busch<br>Time: 9:30 a.m.<br>Place: Department 301<br><br>Date Action Filed: June 21, 2007<br>Trial Date: Not yet set<br><br>Attachments: Exhibit A, Map of Safety Zones; Exhibit B, List of Gang Members for Service and Enforcement of Preliminary Injunction |

Plaintiff People of the State of California's Application for Preliminary Injunction in the above-entitled action came on regularly for hearing at 9:30 a.m. on September 18, 2007 in Courtroom 301 of this Court. Plaintiff appeared through its counsel of record, Deputy City Attorneys Jennifer Choi and Jill Cannon. Defendants Chopper City criminal street gang, Eddy Rock criminal street gang and Knock Out Posse criminal street gang failed to appear or offer any opposition to the Application. Defendant-Intervenor Makia Johnson ("Intervenor") appeared through her counsel of record, Deputy Public Defender Christopher F. Gauger. Amici Curiae American Civil Liberties Union of Northern California and

1

ORDER GRANTING PRELIM. INJUNC., CHOPPER CITY, ET AL.                                 Case 464493

1  Lawyers' Committee for Civil Rights of the San Francisco Bay Area appeared through
2  Kendra Fox-Davis.
3      Having read and considered the moving papers and evidence filed herein, as well as
4  Intervenor's papers and evidence, and Amici Curiae's papers, and having heard the argument
5  of counsel, the Court determines that Plaintiff's Application for Preliminary Injunction is
6  GRANTED.
7      This Court finds by clear and convincing evidence that service is proper under the
8  circumstances, that defendants Chopper City, Eddy Rock and Knock Out Posse are criminal
9  street gangs as defined by Penal Code Section 186.22 (the Street Terrorism Enforcement and
10 Prevention "STEP" Act), and the gangs' and their members' conduct and activities cause a
11 public nuisance in each of the Safety Zones.
12     **The Individual Gangs as Defendants and Service**: The Intervenor and Amici
13 contend that the People have not shown that the gangs are entities that can be sued as
14 unincorporated associations. Intervenor relied on the decision of *People v. Broderick Boys*
15 (2007) 149 Cal.App.4th 1506, in which the court held that an unincorporated association
16 must be organized for a lawful purpose to effect service on the entity by serving a single
17 member under Corporations Code §§ 18035(a) and 18220. Intervenor argued that the People
18 have alleged that Chopper City and the other gangs are criminal street gangs and since the
19 People have not shown that the gangs have a lawful purpose, the gangs cannot be sued as
20 legal entities. This Court finds that *Broderick Boys* is not controlling. The holding in
21 *Broderick Boys* was that service was inadequate, not that the gang could not sued as an
22 entity. Moreover, the court stated: "[A]nd in any event, the district attorney did not take steps
23 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency
24 of the action and afford them an opportunity to present their objections.'" (*Id.* at P. 1511.)
25 The Court did not reach the question of whether, assuming proper service, the gang could be
26 sued as an unincorporated entity. Therefore *Broderick Boys* does not stand for the
27 proposition asserted by Intervenor.
28

1    In the very recent case of *People ex rel Gregory D. Totten v. Colonia Chiques*, the Court stated that an unincorporated association under Corporations Code section 18035(a) requires a lawful purpose. (*People ex rel Gregory D. Totten v. Colonia Chiques* (Oct. 15, 2007, B184772) _ Cal.App.4th _ [2007 WL 2985221].) The Court went on, however, to hold that regardless of whether the gang had a lawful purpose, it could be sued for injunctive relief as an unincorporated association under Code of Civil Procedure Section 369.5(a). (*Id.*) The Court considered legislative history and found that the definition of unincorporated association in section 18035(a) was not meant to shield gangs from injunctions. (*Id.*) *Colonia Chiques* is the first court to consider and directly hold that a gang can be sued as an unincorporated association. *Colonia Chiques*' holding is in line with previous court opinions, which recognized the right to sue a gang as an unincorporated association. (See *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1125; *People v. Englebrecht, Jr.* (2001) 88 Cal.App.4th 1236.)

The Court finds that the gangs were properly sued under Code of Civil Procedure Section 369.5(a). The Court notes that the gangs may have some lawful purpose, but given Section 369.5(a) the Court does not have to make a finding regarding lawful purpose in order to determine that the gangs can be sued.

Here, neither Intervenor nor Amici Curae have challenged the People's method of service. The People posted notices on each street corner within the two Safety Zones, personally served all the pleadings on at least seven members from each gang, and published notices of the pendency of the action and motion in both the San Francisco Chronicle and the San Francisco Examiner.[1] (See the People's 2 Declarations re: Publication of Notice, 2 Declarations re: posting of notice in Safety Zones and the Proofs of Service of Summons.)

---

[1] The People served eight members from Knock Out Posse, eight members from Chopper City, including Intervenor Makia Johnson, and seven members of Eddy Rock. The posted and published notices, which were approved by the Court, described the nature of the action and the pending motion for the preliminary injunction, provided information about when and how the parties could appear to contest the requested relief, and gave the contact information for anyone wishing to obtain the complete pleadings.

1  Given these steps taken to apprise the gangs of the pendency of the action and their
2  opportunity to appear, the Court concludes that service was effective and within the
3  constitutional mandate of *Mullane v. Central Hanover B. & T. Co.* (1950) 339 U.S. 306, 314.
4       **Evidence of a Public Nuisance**: Civil Code Section 3479 defines a public nuisance
5  as "anything which is injurious to health, including, but not limited to, the illegal sale of
6  controlled substances, or is indecent or offensive to the senses, or an obstruction to the free
7  use of property, so as to interfere with the comfortable enjoyment of life or property...." The
8  People presented 115 declarations from police officers[2] documenting conduct within the
9  Safety Zones that, by clear and convincing evidence, establishes that each of the gangs has
10 engaged and continues to engage in conduct that constitutes a public nuisance. The
11 declarations support the finding, by clear and convincing evidence, that the gangs are
12 engaged in drug trafficking and using business practices that cause a public nuisance. The
13 declarations also support the finding that Knock Out Posse and Chopper City are allied in a
14 deadly gang rivalry with Eddy Rock and that this rivalry and the actions stemming from it
15 cause a public nuisance inside the Safety Zones.
16       Intervenor and Amici do not dispute that there is clear and convincing evidence that
17 the defendants are criminal street gangs.[3] Rather, Intervenor challenges the People's reliance
18 on police declarations, noting that the record in *Acuna, supra*, 14 Cal.4th 1090, included
19 "citizen" declarations and that the People did not provide any "citizen" declarations here.
20 Intervenor submitted several declarations by individuals living or working in the Safety
21 Zones, but those declarations focus primarily on whether an injunction would be effective
22 and the effects of an injunction on the alleged gang members. The People correctly argue
23 that *Acuna* does not mandate such declarations. Moreover, the People state and provide

---

[2] Police Officers Do and Burrows submitted two declarations each, one as an expert and one providing their personal knowledge.

[3] Intervenor stated in one line that she did not concede that the defendants were criminal gangs. Amici does not address the issues of whether there is clear and convincing evidence that defendants are criminal gangs and that the gangs are causing a public nuisance.

4

ORDER GRANTING PRELIM. INJUNC., CHOPPER CITY, ET AL.                    Case 464493

1 evidence that such declarations were not sought, at least in part due to the gangs' well-
2 established pattern of witness intimidation. Certainly, the source of the evidence is for the
3 Court to weigh. The fact is that the police declarations provide extensive evidence of
4 nuisance activity and reflect the concerns of persons in the Safety Zones who are reporting
5 conduct documented in the police declarations.

Given the present state of the record, the People are likely to prevail by clear and convincing evidence on the claims that the activities of each individual gang come within the definition of a public nuisance, and the nuisance is substantial and unreasonable. (See *People v. Engelbrecht, supra*, 67 Cal.App.4th at 492.)

**Parties Subject to the Preliminary Injunction:** No one has appeared on behalf of any of the three gangs. By clear and convincing evidence, the People have established the existence of each of the three gangs, their operation within their respective Safety Zones, and their commission of acts constituting a nuisance.

In naming the alleged gang members who would be bound by the preliminary injunction, the People rely on the expert declarations of Officer Davis Do and Reese Burrows to bring together evidence in the record and to opine on the involvement of each of the named gang members. No one has objected to the expert qualifications of Officers Do and Burrows. The record establishes Officer Do's qualifications as a gang expert, in particular an expert on the Knock Out Posse and Chopper City gangs. The record establishes Officer Burrow's qualifications as a gang expert, in particular an expert on the Eddy Rock gang. Courts consistently admit expert testimony of the kind given by Officers Do and Burrows. (See, e.g., *People v. Garedely* (1996) 14 Cal.4th 605, 616-620.) In addition, the courts recognize that such testimony is sufficient to establish that a person is a member of a criminal street gang beyond a reasonable doubt. (*Ibid.*)

For the purpose of granting a civil injunction, the decision in *People v. Engelbrecht, supra*, 67 Cal.App.4th at p. 1261, defines an active gang member as "a person who participates in or acts in concert with an ongoing organization, association or group of three or more persons, whether formal or informal, having as one of its primary activities the

5

Case 3:07-cr-00403-MMC   Document 11-2   Filed 12/06/2007   Page 7 of 19
DEC-05-2007 12:25    CITY ATTY STE 600         415 437 4944    P.07/19

1  commission of acts constituting the enjoined public nuisance, having a common name or
2  common identifying sign or symbol and whose members individually or collectively engage
3  in the acts constituting the enjoined public nuisance. The participation or acting in concert
4  must be more than nominal, passive, inactive or purely technical." The *Engelbrecht* court
5  rejected the argument that the individual must "devote all or a substantial part of his time to
6  the gang." (*Id.* at pp. 1260-1261.)
7       Intervenor Makia Johnson has submitted a declaration denying that she is a member
8  of Chopper City. Officer Do opines that Ms. Johnson is an active gang member. He relies on
9  three incidents. In one, she was arrested in the Safety Zone for a robbery committed with an
10 unidentified person outside the Safety Zone. This incident sheds no light at all on whether
11 she is a gang member. Next, he refers to her loitering with a non-gang member and an
12 unidentified "juvenile member of Chopper City" in the Safety Zone. Officers thought that
13 Ms. Johnson and her friend "appeared to motion" to the juvenile when they approached,
14 causing the juvenile to hide. When they approached the juvenile, Ms. Johnson and her friend
15 asked why. No information is given as to the juvenile, or how he is associated with the gang.
16 No information is given to suggest that they were engaged in any illegal conduct. No one
17 was arrested. No contraband was found. Ms. Johnson's inquiry on behalf of the juvenile was
18 not unlawful. This incident does not support gang membership. Finally, Ms. Johnson was
19 found inside a gang hangout in possession of a bag of marijuana that the officers executing
20 the search warrant believed was of sufficient quantity that it was possessed for sale. A
21 compact disc with gang writings on it was found at the scene. Ms. Johnson was found in the
22 gang hangout with one named gang member, another named person, and a "juvenile member
23 of Chopper City." The People have not presented evidence that this named person or the
24 juvenile member are members of Chopper City. This incident at least associates Ms.
25 Johnson with a gang member at a gang location. But no evidence suggests the compact disc
26 was hers or that she was even aware of it. There is no evidence as to the actual quantity of
27 marijuana from which either Officer Do or the Court could assess the strength of the sales
28 claim. There is no evidence that Ms. Johnson flashes gang signs, has gang tattoos, associates

6

ORDER GRANTING PRELIM. INJUNC., CHOPPER CITY, ET AL.            Case 464493

with the gang, or works for the gang. The evidence is not sufficient for the Court to conclude that she participates in or acts in concert with the gang. Therefore, on the current record, the Court finds that the People have not shown by clear and convincing evidence that Intervenor Makia Johnson is an active member of Chopper City.

The Court finds, by clear and convincing evidence, that the remaining persons named by the People as gang members are active gang members under the *Engelbrecht* test[4] with the exception of Sala Thorn.[5]

**Issuance of a Preliminary Injunction:** The People seek a preliminary injunction against the three gangs themselves and persons who have been named and served with the proposed preliminary injunction. The People contend that the proposed injunction is essential to address the magnitude of the impact of these gangs' conduct on the community and is narrowly tailored to address the public nuisance that pervades the Safety Zones.

Intervenor and Amici focus on the impact of the proposed injunction on gang members' right of association with family, friends, organizations, and resources within the Safety Zone. This concern was expressly considered and rejected in *People v. Englebrecht*, supra, 88 Cal.App.4th at p. 1263, where the court explained:

> Collective activity by gang members is at the core of the nuisance the injunction justifiably attempts to abate. While it may be that many gang members are also related by family, and while the injunction's associational restrictions may affect, in the target area, contact between those family members, those facts are not determinative. The injunction places no restrictions on contact between any individuals outside the target area. In the target area the injunction merely requires

---

[4] The preliminary injunction is effective only against those who have been named and served. Upon service, these individuals have the right to challenge the People's evidence, and the People have the right to move to add additional individuals.

[5] Officer Do recites some heinous criminal conduct attributed to Mr. Thorn, but that is unassociated with the gang or the Safety Zones. Confidential sources have twice reported buying drugs from Mr. Thorn within the Safety Zone. But no evidence associates Mr. Thorn with the gang or gang members. Do refers to nothing putting Mr. Thorn in contact with the gang, flashing gang signs, associating with the gang, or otherwise suggesting he acted in concert with the gang. An inference arising from the fact that the gang may try to enforce a monopoly on drug sales in the Safety Zone is not sufficient to satisfy the clear and convincing standard of proof on these facts, especially given evidence of at least one other unnamed, albeit allied, gang operating within the Chopper City Safety Zone.

> gang members not to associate in public. While the injunction may place some burden on family contact in the target area, it by no means has, in our view, a fundamental impact on general family association.
>
> Any attempt to limit the familial associational impact of the injunction would make it a less effective device for dealing with the collective nature of gang activity.

See also *People ex rel. Gallo v. Acuna*, 14 Cal.4th at 1112.

Intervenor and Amici argue that the gang signs provision is not narrowly tailored. The Court agrees with Intervenor and Amici and finds that the proposed gang signs provision was broader than the gang signs provision upheld in *Engelbrecht*. (*Engelbrecht, supra*, 88 Cal.App.4th at pp. 1266-1267.) The Court has tailored the gang signs provision to conform with *Engelbrecht*.

Intervenor and Amici express concern that the injunction will be used by the police to target and harass African-American youth. This is a bona fide concern, but the Court cannot assume that the police will engage in unconstitutional conduct in the enforcement of the injunction. This concern does highlight the need for specificity in the terms of any injunction and clear and convincing evidence that those who are subject to the injunction are active gang members.

Intervenor and Amici criticize the People for not consulting with community organizations regarding the utility of the proposed injunction and the impact on the ability of the community organizations to carry out their programs if the injunction is issued. Intervenor presented evidence of the various community programs that are conducted in or near the Safety Zones. No one is disputing that many organizations in the Western Addition contribute to the well-being of the community within the Safety Zones. Much of the work done by these community organizations can be done outside the Safety Zones. Further, there is little evidence that the gang members are participants in activities that must be carried out within the Safety Zones. At the same time, the record shows that drug sales and violence are serious problems. Despite the efforts by these and other organizations, those in the Safety Zones are subject to having their lives disrupted by a repeated pattern of criminal conduct. It is this conduct that the injunction seeks to address, not the beneficial work of organizations

seeking to improve the area and the lives of those who live there. In determining whether to issue the injunction, it is the impact on the gang and its members that is central, not the impact on community organizations.

Finally, Intervenor and Amici rely on a declaration from Judith Greene, an expert on gang suppression tactics, who testifies, based on her work and others upon whom she relies, that "gang injunctions are ineffective for three reasons: very loose criteria are used to establish who is a gang member, the fact that the consequences of being placed on a gang injunction are permanent and the fact that an affected community's input is ignored." As explained above, the criteria for who is an active gang member is that approved by the courts in prior decisions, and the People's evidence is subject to challenge before the injunction can be enforced. Ms. Greene notes that "[t]here is no 'magic bullet' to end gang crime" but she believes that "[e]videnced-based practices are…scientifically proven to reduce juvenile recidivism and positive outcomes for young people." At present, the individuals that the People seek to enjoin are adults, not juveniles, and Ms. Greene has not proposed an alternate remedy to address the conduct of that group. Moreover, her testimony is not specific to these gangs or their affected neighborhoods and does not address the specific evidence presented and the remedies sought in this case.

Safety Zone: The Chopper City/Knock Out Posse Safety Zone includes that area of San Francisco that is bordered by and includes Ellis Street to the North, Divisadero Street to the West, Turk Street to the South, and Steiner Street to the East. The KOP/Chopper City Safety Zone includes the sidewalk on each of these boundary streets and extends to the outside of any sidewalk on any of these boundary streets. The KOP/Chopper City Safety Zone includes the Marcus Garvey, Martin Luther King and Pitts Plaza Public Housing Complexes. *See* Exhibit A to this Order.

The Eddy Rock Safety Zone includes that area of San Francisco that is bordered by and includes Ellis Street to the north, Gough Street to the east, Turk Street to the south, and Webster Street to the west. The Safety Zone includes the sidewalk on each of these

boundary streets and extends to the outside of any sidewalk on any of these boundary streets. This zone includes the Plaza East Public Housing Complex. *See* Exhibit A to this Order.

Here, the two Safety Zones total 12 square blocks. The Safety Zones are much smaller than the "one-square mile" area upheld in *Engelbrecht, supra,* 88 Cal.App.4th at p. 1242, and the 6.6 square mile area in *Colonia Chiquea, supra,* _ Cal.App.4th _, and each zone is only slightly larger than the 4 square blocks upheld in *Acuna, supra,* 14 cal.4th at p. 1123. Individuals are only constrained within the specific zone related to his or her gang.

**GOOD CAUSE HAVING BEEN SHOWN, IT IS ORDERED** that Defendants CHOPPER CITY Criminal Street Gang and KNOCK OUT POSSE criminal street gang, and those members, associates, and persons acting under, in concert with, for the benefit of, at the direction of, or in association with Defendants CHOPPER CITY Criminal Street Gang and KNOCK OUT POSSE criminal street gang who are designated on the "List of Gang Members For Service And Enforcement Of Preliminary Gang Injunction" attached as Exhibit B to this Order, are enjoined and restrained from engaging in or performing directly or indirectly, any of the following activities in the Chopper City/Knock Out Posse Safety Zone:

1. **Intimidation:** Confronting, intimidating, annoying, harassing, threatening, challenging, provoking, assaulting, or battering any person known to Defendants KNOCK OUT POSSE and CHOPPER CITY, their members, associates, affiliates, recruits or agents, to be a witness to, a victim of, or a complainant about any activity of the KNOCK OUT POSSE or CHOPPER CITY Criminal Street Gangs;

2. **Guns or Dangerous Weapons:** (1) possessing any gun, firearm, ammunition, or illegal weapon as defined in Penal Code Section 12020, (2) knowingly remaining in the presence of anyone who is in possession of such gun, firearm, ammunition or illegal weapon, or (3) knowingly remaining in the presence of such gun, firearm, ammunition, or illegal weapon;

3. **Graffiti or Graffiti Tools:** Damaging, defacing, or marking any public or private property of another, or possessing spray paint cans, felt tip marker, or other graffiti tools as defined in Penal Code Section 594.2;

4. **Possession and Sale of Controlled Substances:** Selling, possessing, or using any controlled substance without a prescription or related paraphernalia, as defined in Health and Safety Code Section 11364, including, but not limited to, rolling papers, smoking pipes of any kind, crack vials, and syringes, (2) knowingly remaining in the presence of anyone selling, possessing, or using any controlled substance without a prescription or related paraphernalia, or (3) knowingly remaining in the presence of any controlled substance without a prescription or such related paraphernalia;

5. **Trespassing:** Being present on any private property, including San Francisco Housing Authority property, except (1) with the prior, written consent of the owner, the owner's agent, or person in lawful possession of the property, or (2) in the physical presence of the owner, the owner's agent, or person in lawful possession of the property;

6. **Gang Signs and Gang Symbols:** Flashing the following gang signs or gang symbols with the intent to express gang affiliation, support, or allegiance: "Knock Out Posse", "KOP", "KO", "567", "1600", "Uptown", "Chopper City", "Choppa City", "223", "1800", the "okay" hand sign, the "C" hand sign, and the "thumbs up" hand sign.

7. **Association:** Standing, sitting, walking, driving, gathering, or appearing anywhere in a place accessible to the public with any known member of the KNOCK OUT POSSE or CHOPPER CITY Criminal Street Gang, excluding: 1) when all individuals are inside a school in class or on school business; and 2) when all individuals are inside a church or house of worship. This prohibition against associating with other KNOCK OUT POSSE and CHOPPER CITY gang members applies to all travel to or from school or church or house of worship, and to any congregating before school or church or worship or after school or church or worship.

8. **Loitering:** Loitering in a public place in a manner and under circumstances manifesting the purpose and with the intent to commit an offense specified in Chapter 6 of the Health and Safety Code, commencing with Section 11400, in accordance with Health and Safety Code Section 11532(b);

9. **Gang Recruitment:** Taking any action to recruit gang members for

11

1  Defendants KNOCK OUT POSSE or CHOPPER CITY Criminal Street Gangs, or making
2  any threats or promises to shoot, stab, strike, hit, batter, injure, assault, disturb the peace, or
3  destroy the personal property of anyone, as an incentive to join KNOCK OUT POSSE or
4  CHOPPER CITY gangs;

5      10. **Stopping Members from Leaving Gang:** Stopping a gang member from
6  leaving Defendants KNOCK OUT POSSE or CHOPPER CITY Criminal Street Gangs, or
7  making any threats or promises to shoot, stab, strike, hit, batter, injure, assault, disturb the
8  peace, or destroy the personal property of anyone, as an incentive not to leave KNOCK OUT
9  POSSE or CHOPPER CITY gangs; and

10     11. **Violation of Laws:** Violating any laws, including, but not limited to, laws
11 prohibiting homicide, robbery, assault, battery, burglary, theft, auto theft, vandalism, graffiti,
12 mischief, trespass, loitering with intent to commit a narcotics offense, possession, use,
13 transportation, and sales of controlled substances.

14     **GOOD CAUSE HAVING BEEN SHOWN, IT IS ALSO ORDERED** that
15 Defendant EDDY ROCK Criminal Street Gang, and those members, associates, and persons
16 acting under, in concert with, for the benefit of, at the direction of, or in association with
17 Defendant EDDY ROCK criminal street gang who are designated on the "List of Gang
18 Members For Service And Enforcement Of Preliminary Gang Injunction" attached as Exhibit
19 B to this Order, are enjoined and restrained from engaging in or performing directly or
20 indirectly, any of the following activities in the Eddy Rock Safety Zone:

21     1. **Intimidation:** Confronting, intimidating, annoying, harassing, threatening,
22 challenging, provoking, assaulting, or battering any person known to Defendant EDDY
23 ROCK, its members, associates, affiliates, recruits or agents, to be a witness to, a victim of,
24 or a complainant about any activity of the EDDY ROCK Criminal Street Gang;

25     2. **Guns or Dangerous Weapons:** (1) possessing any gun, firearm, ammunition,
26 or illegal weapon as defined in Penal Code Section 12020, (2) knowingly remaining in the
27 presence of anyone who is in possession of such gun, firearm, ammunition or illegal weapon,
28

or (3) knowingly remaining in the presence of such gun, firearm, ammunition, or illegal weapon;

    3.    **Graffiti or Graffiti Tools:** Damaging, defacing, or marking any public or private property of another, or possessing spray paint cans, felt tip marker, or other graffiti tools as defined in Penal Code Section 594.2;

    4.    **Possession and Sale of Controlled Substances:** Selling, possessing, or using any controlled substance without a prescription or related paraphernalia, as defined in Health and Safety Code Section 11364, including, but not limited to, rolling papers, smoking pipes of any kind, crack vials, and syringes, (2) knowingly remaining in the presence of anyone selling, possessing, or using any controlled substance without a prescription or related paraphernalia, or (3) knowingly remaining in the presence of any controlled substance without a prescription or such related paraphernalia;

    5.    **Trespassing:** Being present on any private property, including San Francisco Housing Authority property, except (1) with the prior, written consent of the owner, the owner's agent, or person in lawful possession of the property or (2) in the physical presence of the owner, the owner's agent, or person in lawful possession of the property;

    6.    **Gang Signs and Gang Symbols:** Flashing the following gang signs or gang symbols with the intent to express gang affiliation, support, or allegiance: "Eddy Rock", "OC", "Paypa Bound", "Downtown", "ER", "E", "PB", "37", "72", "1200," and "rock" symbol.

    7.    **Association:** Standing, sitting, walking, driving, gathering, or appearing anywhere in a place accessible to the public with any known member of the EDDY ROCK Criminal Street Gang, excluding: 1) when all individuals are inside a school in class or on school business; and 2) when all individuals are inside a church or house of worship. This prohibition against associating with other EDDY ROCK gang members applies to all travel to or from school or church or house of worship, and to any congregating before school or church or worship or after school or church or worship.

13

ORDER GRANTING PRELIM. INJUNC., CHOPPER CITY, ET AL.    Case 464493

8. **Loitering:** Loitering in a public place in a manner and under circumstances manifesting the purpose and with the intent to commit an offense specified in Chapter 6 of the Health and Safety Code, commencing with Section 11400, in accordance with Health and Safety Code Section 11532(b);

9. **Gang Recruitment:** Taking any action to recruit gang members for Defendant EDDY ROCK Criminal Street Gang, or making any threats or promises to shoot, stab, strike, hit, batter, injure, assault, disturb the peace, or destroy the personal property of anyone, as an incentive to join EDDY ROCK Criminal Street Gang;

10. **Stopping Members from Leaving Gang:** Taking any action to stop a gang member from leaving Defendant EDDY ROCK Criminal Street Gang, or making any threats or promises to shoot, stab, strike, hit, batter, injure, assault, disturb the peace, or destroy the personal property of anyone, as an incentive not to leave EDDY ROCK Criminal Street Gang; and

11. **Violation of Laws:** Violating any laws including, but not limited to, laws prohibiting homicide, robbery, assault, battery, burglary, theft, auto theft, vandalism, graffiti, mischief, trespass, loitering with intent to commit a narcotics offense, possession, use, transportation, and sales of controlled substances.

IT IS ALSO ORDERED:

1. No member of Chopper City, Eddy Rock, or Knock Out Posse shall be subject to the provisions of this Order unless that individual has been previously personally served with this Order;

2. This Order shall be subject to modification of any of its terms upon noticed motion of (a) any party or (b) any individual named or served under paragraph 1 above; and

3. Plaintiff, the People of the State of California, shall not be required to post an undertaking pursuant to Code of Civil Procedure section 529(b)(3).

IT IS SO ORDERED.

Dated: October 18, 2007

The Hon. Peter J. Busch
Judge of the Superior Court

14

ORDER GRANTING PRELIM. INJUNC., CHOPPER CITY, ET AL.                    Case 464493



Exhibit A

**Exhibit B**

List of Gang Members for Service and Enforcement of Preliminary Injunction

### CHOPPER CITY GANG MEMBERS

DENNIS ANDERSON, DOB 1/12/82 or 1/12/83 or 1/23/83 or 1/22/84[1]
DEON ANDERSON, DOB 1/12/82 or 1/12/83 or 1/23/83 or 1/22/84
BYRON CHEEVES, DOB 6/25/85
DERON CHEEVES, DOB 11/21/87
CLARENCE COOK, DOB 1/24/86
JAMAL GAINES, DOB, 7/31/86
DWIGHT HART, DOB 2/24/87
ANTOINE JOHNSON, DOB 6/10/83
RICKY ROUNDS, DOB 12/1/86
CARNELL TAYLOR, DOB 6/24/69
KARWARN THORN, DOB 9/9/83

### EDDY ROCK GANG MEMBERS

DONTAE ALLEN, DOB 4/10/79
ANDRE BERNARD, DOB 2/2/81
MAURICE BIBBS, DOB 9/22/87
DESHAWN CAMPBELL, DOB 8/7/87
MAURICE CARTER, DOB 6/4/75
RAYMOND DAVIS, DOB 11/12/79
ROBERT HARVEY, DOB 9/29/75
LESLIE HOWARD, DOB 12/3/79
DONTAYE HUBBARD, DOB 6/3/80
KETHAN HUBBARD, DOB 9/30/81
STEVE JOHNSON, DOB 3/7/80
DELARIAN LEE, DOB 7/5/87
DION MARTIN, DOB 11/14/88
PARIS MOFFETT, DOB 3/26/78
DELSHAWNTE SMITH, DOB 3/23/80
DEMETRIUS SMITH, DOB 2/12/82
JONATHAN SMITH, DOB 5/16/85
HANNIBAL THOMPSON, DOB 8/1/87
DEANDRE WATSON, DOB 7/17/88

---

[1] Dennis Anderson and Deon Anderson are brothers who have been known to interchange names and various birth dates.

1

## KNOCK OUT POSSE GANG MEMBERS

JUAN ALLEN, DOB 8/13/80
DANA BALL, DOB 12/12/88
FLOYD BARROW, DOB 1/11/80
KILAMANJARO BELL, DOB 12/8/86
LAVEAUX DEROSANE, DOB 11/5/77
JELVON HELTON, DOB 3/18/88
BRIAN HILL, DOB 1/5/81
DARRELL LUCKETT, DOB 4/25/84
TERRY LUCKETT, DOB 10/6/85
MARCUS MAYS, DOB 1/8/84
ROBERT MAYS, DOB 1/30/83
GARY OWENS, DOB 3/3/81

LIST OF GANG MEMBERS FOR SERVICE AND ENFORCEMENT, Case 464493
Exhibit B

California Superior Court

County of San Francisco

Law & Motion Department • Room 301

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA<br><br>Plaintiff,<br><br>v.<br><br>CHOPPER CITY, EDDY ROCK, and KNOCK OUT POSSE<br><br>Defendants. | No. 464493<br><br>Certificate of Service by Mail<br>(CCP § 1013a(4)) |

I, Gordon Park-Li, Clerk of the Superior Court of the City and County of San Francisco, certify that:

1) I am not a party to the within action;

2) On _____ OCT 1 8 2007 _____, I served the attached:

ORDER GRANTING PRELIMINARY INJUNCTION

by placing a copy thereof in a sealed envelope, addressed to the following:

Jill Cannon
Deputy City Attorney
1390 Market Street, 6th Floor
San Francisco, CA 94102-5408

Christropher Gauger
Deputy Public Defender
555 Seventh Street, 2nd Floor
San Francisco, CA 94103

Kenda Fox-Davis
Lawyers' Committee for Civil Rights of the
S.F. Bay Area
131 Steuart Street, Suite 400
San Francisco, CA 94105

Karwan Thom
1652 Turk Street
San Francisco, CA 94115

3) I then placed the sealed envelope in the outgoing mail at 400 McAllister St., San Francisco, CA 94102 on the date indicated above for collection, attachment of required prepaid postage, and mailing on that date following standard court practice.

Dated: _____ OCT 1 8 2007 _____

GORDON PARK-LI, Clerk

By: _____
        deputy